UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                                            :

DEANIE BLAKE,                                          :

                                     Petitioner,        :

                                                        :                  08 Civ. 9288 (GEL)

   -v.-                                                     :

                                                        :                  **OPINION AND ORDER**

ROBERT A. KIRKPATRICK,                :

                                                        :

                                   Respondent.      :

                                                        :
------------------------------------------------------------x

Deanie Blake, pro se.

Alexis Pimentel, Assistant District Attorney (Robert T. Johnson, District Attorney, Bronx County, Peter D. Coddington, Chief Appellate Attorney, of Counsel), Bronx, NY, for respondent.

GERARD E. LYNCH, District Judge:

      Deanie Blake, a New York State prisoner, petitions for a writ of habeas corpus, challenging his conviction, after a jury trial, of sodomy in the first degree and sexual abuse in the first degree, and resulting sentences totaling twenty-five years to life in prison. Blake argues that the prosecution failed to prove his guilt beyond a reasonable doubt; that a jury instruction noting that a defendant has an interest in the outcome of the case denied him a fair trial; that various counts against him should have been severed; and that his right to be free from unreasonable searches and seizures was violated by the collection of his DNA while he was a state prisoner, leading to the admission of evidence used against him at trial. As all of Blake's claims are without merit, the petition will be denied.

**BACKGROUND**

Blake was tried on charges resulting from two separate incidents. The evidence at trial would support the following findings.

On December 29, 2002, Luz D., a bank teller, returned to her Bronx home in the evening after making a call from a pay telephone. Upon entering her building, she held the door open for Blake, whom she did not know, because she assumed he lived in the building. Both rode up in the elevator, with Blake pressing the button for a higher floor than Luz. When the elevator reached Luz's floor, Blake blocked her exit, displayed a knife, and demanded money on threat of death. When it turned out she had no money, Blake forced Lux at knifepoint to pull down her pants and underpants, manually penetrated her vagina, forced her to touch his penis, and required her to fellate him until he ejaculated in her mouth. He then took her scarf and necklace and left.

Luz returned to her apartment, shaken and crying, and unable to articulate to her roommate what had occurred. Her roommate saw fluid on her sock, and when Luz recovered sufficiently to report that a man with a knife had made her perform oral sex, called the police. Within an hour of the attack, a police officer arrived and collected articles of Luz's clothing, including the sock on which the officer saw "a glob of what was apparently bodily fluid." The clothing was sent for laboratory analysis.

On April 25, 2003, Gwendolyn F., another Bronx resident employed by the State Insurance Fund, arrived at her home after midnight following an after-work party. Blake followed her into the building. As in the earlier incident, he pressed the button for a higher floor than Gwendolyn, and forcibly prevented her from getting off at her floor. Blake pressed a cold object that Gwendolyn believed to be a gun against the back of her neck, and threatened to shoot

her. He took a gold earring and $60 from her, and eventually escorted her to a nearby apartment building. There, he pulled down her pants and forcibly inserted his penis into her vagina from behind. After a minute or two, he asked, "what is this stuff all over my shirt?", withdrew, and left the building. Gwendolyn immediately called her sister, who in turn called the police, from a nearby laundromat. The police took her to a hospital, where a rape kit was prepared and sent for laboratory analysis.

The DNA profiles of semen recovered from Luz's sock and Gwendolyn's rape kit matched each other and defendant's DNA profile, obtained from the state's databank of convicted offenders. Police officers arrested Blake, and took an oral DNA sample, which also matched the semen from the two incidents. Both Luz and Gwendolyn separately viewed lineups and identified Blake as their attacker.

Blake testified in his own defense, claiming that he had met Luz (whom he knew as "Lunday" or "Lourdes") in a laundromat, where she told him that she was a prostitute who charged $50 to have sex with men. They met on three subsequent occasions, according to Blake, getting high on liquor and/or marijuana and had oral and vaginal sex, using condoms. The last of these occasions was on the evening of December 29, 2002, when they had vaginal and oral sex in the elevator of Luz's building, again using a condom. Blake reported that he ejaculated into the condom, and threw it to the ground. He claimed that Luz became angry when he only gave her $25.

Blake similarly claimed that he picked up Gwendolyn (who he came to know as "Gin") on the street, and agreed to pay her $50 for sex, but that during their sexual encounter the condom broke and semen dripped onto his pants and Gwendolyn's body. When Gwendolyn saw

that Blake had a large amount of cash, she demanded $100, complaining that the burst condom could lead to her becoming pregnant or getting AIDS. When Blake refused to pay more than he had agreed, he said, Gwendolyn became angry and cursed him. On cross-examination, Blake admitted that at the time of his arrest he had not told the officers that he had consensual sex with either woman, but instead told them that he didn't remember "having sex with any girl inside a hallway of a building."

Blake was found guilty of one count of first-degree sodomy for forcing oral sex on Luz D. and one count of first-degree sexual abuse for forcing her to touch his penis. He was acquitted of a sexual abuse count for touching Luz's vagina, and of robbing her, and of all counts involving Gwendolyn F.

## DISCUSSION

Each of Blake's claims – which incorporate the arguments he made on his direct state appeal – are manifestly without merit.

**I.      Sufficiency of the Evidence**

Blake claims that the prosecution failed to present sufficient evidence on the counts of which he was convicted. Although respondent argues that this claim is procedurally barred, it is unnecessary to delve into the sometimes labyrinthine procedural corridors of habeas corpus law, since Blake's argument is frivolous. As a constitutional matter, a verdict is supported by sufficient evidence if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis omitted). Here, Luz D. testified that Blake, whom she picked out of a lineup, had forced her at knifepoint to

engage in oral sex and to touch his penis.  The sexual encounter is corroborated by the DNA match (and Blake's own testimony) and if Luz's testimony – which was strongly corroborated by the testimony both of her roommate and of the police officer to whom she promptly reported the attack – is accepted, the element of forcible compulsion, N.Y. Penal Law § 130.50(1), is also firmly established.  Since, for purposes of evaluating the sufficiency of the evidence, all issues of credibility are presumed to have been resolved by the trier of fact in the prosecution's favor, Jackson, 443 U.S. at 326, the evidence was plainly sufficient to warrant the jury's verdict.

As indicated in his state appellate brief, Blake's real argument is not that there was insufficient evidence to establish guilt beyond a reasonable doubt on the counts on which he was convicted, but that the pattern of *acquittals* in connection with the Luz D. incident demonstrates that the jury's verdicts were irreconcilable, and therefore irrational.  In the first place, there is nothing logically inconsistent about the verdicts.  It is entirely within the compass of the jury to believe a witness with respect to some portions of her testimony and have doubts about other portions; there is nothing inconsistent about finding that Blake did force Luz to engage in oral sex and touch his penis but did not forcibly touch her genitals or rob her.  And even if there were some inconsistency, it is well established that inconsistent jury verdicts violate no constitutional right of the defendant, but merely represent "the unreviewable power of a jury to return a verdict of not guilty for impermissible reasons."  Harris v. Rivera, 454 U.S. 339, 346 (1981).  See also United States v. Powell, 469 U.S. 57 (1984); Dunn v. United States, 284 U.S. 390 (1932).[1]

---

[1] To the extent Blake also incorporates his appellate argument that the verdict was against the weight of the evidence, this argument raises a pure question of state law not cognizable on federal habeas corpus.  E.g., Williams v. New York, No. 06 Civ. 2475, 2009 WL 281687, at *4 (S.D.N.Y. Feb. 6, 2009).

## II.   Interested Witness Instruction

Blake's claim that the trial judge's interested witness instruction deprived him of a fair trial is also meritless.  The propriety of a state trial court's jury instructions generally raises only issues of state law not cognizable on habeas corpus.  See Cupp v. Naughten, 414 U.S. 141, 146 (1973).  For an instruction to constitute federal constitutional error entitling a defendant to habeas corpus relief, the ailing instruction must have "so infected the entire trial that the resulting conviction violates due process."  Id. at 147.  See also Middleton v. McNeil, 541 U.S. 433, 437 (2004) (same).

Relying primarily on United States v. Gaines, 457 F.3d 238 (2d Cir. 2006), Blake argues that the trial court's "interested witness" instruction meets this standard.  The argument is unavailing.  First, Gaines was a federal prosecution, in which the Second Circuit ruled only on the correctness of a jury instruction under federal law; it did not hold that the instruction given in that case violated the defendant's constitutional rights.  Although the Court referenced the potential of the charge given there to "dilute the presumption of innocence," id. at 246, its thorough discussion of various circuits' pattern jury instructions and its directions to the district courts with respect to the advice properly to be given to juries on this subject, id. at 248-49, makes clear that the Court was primarily acting under its supervisory authority over prosecutions in the federal courts.

Second, even if the Second Circuit's ruling had been constitutional in nature, habeas relief may only be granted where a state court's decision is contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.  28 U.S.C. § 2254(d)(1).  The relevant Supreme Court precedents on the subject of interested witness instructions find no error

in jury instructions calling attention to a defendant's interest in the outcome of a trial as a factor bearing on credibility, Reagan v. United States, 157 U.S. 301, 305 (1895); Hicks v. United States, 150 U.S. 442, 451-52 (1893), so long as the instruction does not imply that the defendant has been untruthful in his testimony, Reagan, 157 U.S. at 310; Hicks, 150 U.S. at 451-52.

Finally, the charge given here is sharply distinguishable from the one given in Gaines. The critical defect of the Gaines charge was that, by instructing the jury that the defendant's interest in the case "creates a motive for false testimony," 457 F.3d at 242, the trial court "assumed the guilt" of the defendant, id. at 246, because only an interested *and guilty* defendant has a motive to *falsely* exonerate himself. The instruction given here does not share that defect. After several times emphasizing the presumption of innocence and the prosecution's burden to prove guilt beyond a reasonable doubt, and in particular that the defendant's choice to take the stand did not shift that burden in any way (Tr. 1345-46), the trial court instructed the jury merely that in assessing a witness's credibility, it "may consider whether [the] witness has any interest in the outcome of the case," and that "[a] defendant who testifies on his own behalf has an interest in the outcome of the case." The court immediately balanced that instruction by correctly advising the jury that it was "not required to reject the testimony of an interested witness." (Tr. 1350-51.)

The instruction given, which was taken almost verbatim from the New York pattern jury instructions, cf. CJI2d[NY] Credibility-Interest/Lack of Interest, was not erroneous under state law, nor was the Appellate Division's conclusion that the "interested witness charge did not shift the burden of proof or undermine the presumption of innocence," People v. Blake, 835 N.Y.S. 2d

7

78, 79 (1st Dept. 2007), inconsistent with clearly-established Supreme Court precedent.  The instruction thus provides no basis for overturning Blake's conviction.

### III. Severance

Blake next argues that the trial judge's refusal to order separate trials on the charges based on the two separate incidents denied him a fair trial.  This argument is completely without merit.  The two sets of offenses were joinable under New York procedural law because they "are the same or similar in law."  N.Y. Crim. Proc. Law § 200.20(2)(c).  While a trial judge has substantial discretion to sever charges so joined "in the interest of justice and for good cause shown," id. § 200.20(3), no abuse of discretion, still less any violation of Blake's constitutional rights, occurred here.  The evidence on the two sets of charges was equally strong, consisting in each case primarily of a DNA match and the victim's line-up identification; the charges were distinct and not overlapping; and there was sufficient similarity in the perpetrator's modus operandi that evidence of each incident may well have been admissible at the trial of the other had the charges been severed.  Moreover, the absence of prejudice to the jury's ability to consider the charges separately is persuasively documented by the pattern of verdicts, in which the jury acquitted Blake of all of the charges involving Gwendolyn F.  Evidently, the joinder of the charges involving Luz D. did not lead to his conviction of the crimes charged in the separate incident, nor could the charges involving Gwendolyn F., of which the jury found Blake not guilty, have led the jury to convict him on (some of) the separate charges involving Luz D.

Even if this Court believed that the trial court should have granted a severance – and it emphatically does not – there would be no basis for habeas relief.  Blake cites no decision, and this Court has found none, in which the Supreme Court has held that a denial of a severance

violated a defendant's constitutional right to a fair trial. Indeed, the Court has held that "[i]mproper joinder does not, in itself, violate the Constitution." United States v. Lane, 474 U.S. 438, 446 n.8 (1986). To the extent the Supreme Court went on to state, in dictum, that misjoinder could "rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his [Fourteenth] Amendment right to a fair trial," id., petitioner has not met that burden. For the reasons stated above, the Appellate Division's conclusion that the trial court here "providently exercised its discretion" in denying a severance, 835 N.Y.S.2d at 80, is not an unreasonable application of Supreme Court precedent.

### IV.     Seizure of the DNA Sample

Finally, Blake's argument that the collection of his DNA while he was a state prisoner constituted an unreasonable search and seizure in violation of the Fourth Amendment is both precluded from habeas review and foreclosed on the merits by authoritative precedent. A federal court may not consider a Fourth Amendment claim on habeas corpus where the petitioner was given an opportunity for a full and fair review of the claim in the state courts. Stone v. Powell, 428 U.S. 465 (1976). The state trial court held a pre-trial hearing and heard arguments regarding the DNA sampling in this case, revisited the matter in response to Blake's post-trial motions, and issued written, fully-reasoned decisions rejecting all of defendant's claims. (Pimentel Decl. Exs. 6, 8.) The Appellate Division reviewed the trial court's rulings, and affirmed, holding the acquisition of the DNA sample consistent with constitutional requirements. 835 N.Y.S.2d at 80. Blake thus had a full and fair opportunity to litigate his Fourth Amendment claims in the state courts, which therefore may not be considered on habeas corpus.

At any rate, it would avail petitioner nothing even if he were permitted to re-litigate the

## CONCLUSION

For all of the foregoing reasons, the petition is denied. Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. Petitioner may, however, pursue any further appellate relief *in forma pauperis*.

SO ORDERED.

Dated: New York, New York
       March 4, 2009

_____
GERARD E. LYNCH
United States District Judge

Copy to:
Deanie Blake
05-A-1708
Wende Correctional Facility
P.O. Box 1187
Alden, NY 14004-1187